MURRAY v. DETROIT WIRE SPRING CO.

(District Court, E. D. Michigan. February 5, 1912.)

No. 4,081.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—SPRING SEAT.
    The Murray patent, No. 692,535, for a spring seat, discloses invention, and is valid, but is limited to the particular structure shown and described. As so limited, held not infringed by the device of the O'Brien patent, No. 954,331.

In Equity. Suit by William A. Murray against the Detroit Wire Spring Company. On final hearing. Decree for defendant.

Walter F. Murray, of Cincinnati, Ohio, for complainant.
Barthel & Barthel, of Detroit, Mich., for defendant.

ANGELL, District Judge. Complainant is the owner of patent No. 692,535 for an improvement in spring seats. This patent has been fully considered by the Court of Appeals of this circuit in Murray v. D'Arcy, 161 Fed. 352, 88 C. C. A. 364. Defendant owns a later patent, No. 954,331, for a spring seat structure, issued to F. O'Brien, and is manufacturing under it springs for seats. Complainant claims

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that by so doing defendant is infringing its patent. Defendant claims that complainant's patent is of doubtful validity, but, if the patent is valid, that springs made by it do not infringe.

The spring in complainant's device passes through perforations in the side walls of a U-shaped metal strip, so spaced as to afford by the spread of the strip itself a base sufficient to retain in place by frictional engagement the spiral spring, when screwed through the perforations, to keep the spring from being unscrewed in use, and to bring it back to a vertical position after release of pressure tending to push it out of the vertical.

In the specification of Murray's patent it is said that in fitting a spring in place its lower end is inserted in either hole, "and the spring is rotated in a manner similar to that used in driving a screw, thereby carrying the end of the spring forward successively through the three remaining holes, the spring being locked thereby securely in place because of the rise in the spiral." The claims here in question all cover "metal cross-strips h having inturned edges with perforations, and coiled springs whose ends engage" or are "seated in * * * the perforations in the cross-strips."

The Court of Appeals in the D'Arcy Case held that Murray's invention stood on very narrow grounds, but conceded that it might be valid for the particular means devised and explained in the specifications. These means are pointed out to be the screwing of the wire through the holes in the sides of the metal rib, or U-shaped strip, and the holding of the wire in place by "friction induced by the rise of the spiral in the coils." 161 Fed. 354, 88 C. C. A. 366.

In the defendant's device the strip is of a slightly different shape from that used in complainant's. The side walls of the strip are brought closer together. The lower edge of the strip on either side is bent outward nearly at right angles to the side walls, so as to make a flange on each side. These flanges are, as the strip is ordinarily applied, nearly horizontal. The end of the spring, after passing through the perforations set opposite one another in the side walls, is depressed, so that it has some bearing on this flange. The spring, where it passes between the side walls, is bent, or kinked, upwards a little by the application of pressure after it has been passed through the perforations. This slight bend tends to prevent the spring from being twisted or screwed in either direction through the perforations. The bearing of the flange on the end of the wire, and the bending, or kinking, of the wire, just spoken of, tend to hold the spring in place, so that, after the release of pressure on it which tends to push it out of the vertical, it will return to a vertical position.

There is no claim in patent No. 954,331 that the wire is held in place by frictional engagement of the spiral spring. The claim is that the kinking holds the spring in place.

1. As regards the validity of the Murray patent, it seems to me there should be no doubt, in view of what was said in Murray v. D'Arcy and the evidence, that the Murray device has had large commercial success.

2. If I correctly apprehend what is said in Murray v. D'Arcy, there is no escape from the conclusion that the Murray patent protects its

owner only against devices in which the spring is screwed through the perforations in the metal rib or strip, and is held in place by the frictional engagement with the rib of the spirally coiled wire.

The O'Brien device must be held to be something more than a mere colorable evasion of the Murray patent. The spring is screwed through the perforations as in the Murray device, and has certainly some bearing against the edges of the perforations. But the bend, or kink, in the wire between the ribs has a real effect in holding the spring in place. If made deep enough, it certainly would prevent the coil from coming out of the perforations. The depression of the end of the wire, so that it has a bearing on the flange, also no doubt adds stability to the springs when thrown out of position laterally. A device which depends on this bearing and this bend to maintain the wire in place, and not alone, if at all, on the frictional engagement of the spirally coiled wire with the edges of the perforations, cannot properly be held a mere evasion of a device which depends solely on such engagement for stability.

Under the construction heretofore given the Murray patent in the D'Arcy Case, and the rule applicable to alleged infringements of specific patents, I feel compelled to hold that defendant's device is not an infringement of the Murray patent, and to dismiss the bill.